IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Norfolk Division

MARION FLEMING,

          Plaintiff,

    v.                              CIVIL ACTION NO. 2:04cv444

JOHN E. POTTER, Postmaster General,
United States Postal Service,

          Defendant.

## *MEMORANDUM OPINION & ORDER*

Before the Court is the Motion of John E. Potter, Postmaster General of the United States

Postal Service ("Defendant"), to Dismiss the Complaint of Marion Fleming ("Plaintiff"), or in

the alternative to grant Summary Judgment.[1]  For the reasons set forth below, Defendant's

motion to dismiss is **GRANTED**.

## I.  FACTS AND PROCEDURAL HISTORY

Plaintiff was hired by the United States Postal Service as a carrier with the Bronx station

in New York on June 30, 2001.  On March 21, 2003, Plaintiff applied for a transfer to the

Norfolk station.  The Norfolk station requested an evaluation of Plaintiff by the Bronx station,

which was completed on April 4, 2003, indicating that Plaintiff did not have any  physical

restrictions or limitations on his ability to perform the job of a carrier.  The evaluation also

---

[1]  As part of the proceedings on the motion to dismiss, Defendant made a motion to
expand the record to include a copy of Plaintiff's appeal to the Equal Employment Opportunity
Commission.  Defendant's motion is **GRANTED**.

included average to excellent ratings for Plaintiff in all areas of his employment.[2]  Plaintiff began

work at the Milan station in Norfolk, Virginia on June 2, 2003.

On June 5, 2003, Carl Bozeman ("Bozeman"), Plaintiff's supervisor, walked with

Plaintiff on a portion of his route.  During that time, Bozeman instructed Plaintiff to finger the

mail[3] and take "obvious short cuts through the grass."  Later that day, Bozeman observed

Plaintiff not following either instruction.  When Bozeman confronted Plaintiff, Plaintiff allegedly

replied, "I am not going to put with this shit."

The following day, Bozeman brought Plaintiff into his office to discuss Plaintiff's route.

Specifically, Bozeman believed that Plaintiff had deviated from the line of travel assigned to him

for that particular collection route.  Bozeman instructed Plaintiff not to do so again.  On June 10,

2003, Plaintiff allegedly deviated from the line of travel again.  Bozeman filed a request for

disciplinary action, in the form of a seven-day suspension.  The next day, Bozeman conducted a

pre-disciplinary interview ("PDI") with Plaintiff to discuss his deviation from the assigned route.

During the PDI, Plaintiff asserted that he took a faster and safer route, and that he had been

trained, presumably in the Bronx station, to do a collections route as he saw fit.

On June 24, 2003, Bozeman issued a disciplinary letter of warning to Plaintiff, regarding

the incident of June 5, 2003.  Two days later, Plaintiff reported to Bozeman that he had suffered

an injury on June 3 or 4, because he had slipped while walking through the grass as Bozeman had

---

[2]  One form allowed Plaintiff's immediate supervisor to rank him in several categories as excellent, good, average, satisfactory, or poor.  Plaintiff received no rank less than average.  A second form allowed this supervisor and a higher level supervisor to rank Plaintiff as excellent, very good, good, fair, or unsatisfactory.  Plaintiff received no rank less than good.

[3]  Defendant explains that "fingering the mail" is a process by which the postal carrier separates the mail for the next address from the stack of mail in his possession.

instructed him.  Bozeman filed another request for a seven-day suspension because of Plaintiff's alleged failure to report the accident.  Plaintiff alleged that he told Bozeman about the accident when it occurred.  Plaintiff then took sick leave from June 26 to August 20, 2003.

Bozeman conducted another PDI with Plaintiff on August 29, 2003 concerning the injury Plaintiff claimed he suffered.  Afterwards, Bozeman told Plaintiff he needed to complete his route in three and a half hours, not five to six hours, as Plaintiff had been doing.  Plaintiff allegedly complained that Bozeman was harassing him and that his disability prevented him from completing the route in that amount of time.  Plaintiff allegedly threatened to get the doctor to change his restrictions, and Bozeman told Plaintiff that if his disability was the reason for his delay, then such a reassessment by the doctor would be a good idea.  Plaintiff immediately took leave to go to the doctor, and returned later that day with a doctor's note instructing that Plaintiff could not engage in any work from that day until October 20, 2003.

On October 20, 2003, the Veterans Administration ("VA") Hospital in Hampton, Virginia, filled out PS Form 2491 for injury compensation.  Plaintiff's injury was diagnosed as a cervical strain in the left trapezoid.[4]  The report recommended that Plaintiff should work no more than eight hours per day, five days per week, and should carry no more than thirty pounds with his right hand only.

---

[4]  "Cervical strain is produced by an overload injury to the muscle-tendon unit because of excessive forces on the cervical spine.  The cause is thought to be the elongation and tearing of muscles or ligaments."  Hunter, Jr., Oregon K., *Cervical Sprain and Strain*, EMedicine, April 8, 2005, at para. 5, *at* http://www.emedicine.com/pmr/topic28.htm (last visited May 3, 2005).  The trapezius muscle, or trapezoid, is the "large, superficial muscle at the back of the neck and the upper part of the thorax, or chest."  *Trapezius Muscle*, Encyclopedia Britannica, 2005, *at* http://www.britannica.com/eb/article?tocId=9073237 (last visited May 3, 2005).

On November 26, 2003, Plaintiff was involved in an accident with a parked vehicle while delivering the mail.  Plaintiff struck the driver side mirror of the parked automobile and broke the mirror on both vehicles.  A Notice of Suspension for fourteen days was issued to Plaintiff on December 13, 2003. The postal service later agreed to reduce this to a letter of warning with the understanding that Plaintiff would receive driver's training.

On January 23, 2004, Plaintiff filed an informal Equal Employment Opportunity ("EEO") complaint with the Postal Service EEO office.  Plaintiff alleged that officials with the post office had discriminated against him on the basis of age[5] and disability, and retaliated against him. Specifically, Plaintiff argued (1) that he had been denied sufficient opportunity to become familiar with his route; (2) that he was improperly instructed to finger mail at unsafe times; (3) that he was assigned work in violation of his medical restrictions; (4) that untrue information was included in the accident report regarding the incident on November 26, 2003; and (5) that the letter of warning issued on June 23, 2003 was based on false allegations.  Plaintiff requested mediation.

On February 17, 2004, a settlement agreement was reached.  The terms of the agreement stated that (1) Plaintiff would file several medical certification forms with Kathleen Day ("Day"), Supervisor, Customer Support for the Norfolk station, by March 3, 2004; (2) management agreed not to assign any tasks requiring Plaintiff to use his left arm above his shoulder, or to violate any other restrictions listed on PS Form 2491 of October 20, 2003; (3) the manager of the Milan Station would provide Plaintiff with copies of the Route Base Data Information ("RBDI") sheets

---

[5] The Court notes that Plaintiff was 49 years old at the time of the accident on November 26, 2003, according to the accident report.

and the Delivery Operations Information System ("DOIS") performance reports for the two weeks following the agreement and discuss those items with Plaintiff; and (4) the post office would complete a PS Form 3999 on Auxiliary Route 819 no later than June 2004.

On or about February 23, 2004, Plaintiff provided the required medical certification forms. Defendant contends that Andrea Mercer ("Mercer"), Manager of Customer Service for the Milan station, complied with the remaining terms of the settlement. Specifically, Defendant contends that Plaintiff's duties were restricted to comply with Plaintiff's medical restrictions, until Defendant received the updated medical restrictions on February 23, 2004. Defendant asserts that Mercer reviewed with Plaintiff how his duties would be adjusted to comply with these new restrictions. Over the next two weeks, Mercer allegedly provided Plaintiff with the RBDI and DOIS reports, and explained them to Plaintiff. Defendant also contends that Mercer provided a document entitled "Goals for 2004" to Plaintiff, which explained her goals and expectations for his performance.[6] Plaintiff disputes that Defendant fulfilled these obligations.

On March 30, 2004, the Postal Service EEO office received a letter dated March 24, 2004, in which Plaintiff alleged that the Postal Service had violated terms of the settlement agreement. The EEO office investigated Plaintiff's allegations. On April 30, 2004, the EEO office issued its decision, finding that the agreement had not been breached. In its letter to Plaintiff, the EEO office advised Plaintiff that he could appeal either to the Equal Employment

---

[6] Defendant contends that Mercer completed the review of Auxiliary Route 819 on a PS Form 3999 on May 29, 2004. However, because Defendant had until June 2004 to complete this review, Defendant could not have been in breach of this portion of the agreement at the time of the agency review. Accordingly, this is not relevant to the appeal before the Court.

Opportunity Commission ("EEOC") Office of Federal Operations within 30 days, or file an appeal with a United States District Court.

On May 18, 2004, the EEOC notified the Postal Service that the EEOC had received an appeal of the decision on May 10, 2004.  The EEOC issued a decision on August 23, 2004, finding that the settlement agreement had not been breached.

Plaintiff filed this current complaint on July 26, 2004.  Plaintiff states that he is appealing the final agency decision of the Postal Service EEO office; to wit, whether the Postal Service complied with the settlement agreement of February 17, 2004.  Plaintiff also alleges that the management has refused to comply with his medical restrictions and has never spoken to him about the RBDI sheets or DOIS performance reports.  Plaintiff contends that all the documents provided by Defendant to the EEO office in support of their position were falsified, and were never viewed, discussed, or signed by Plaintiff.

Defendant filed its Answer on September 28, 2004.  On April 1, 2005, Defendant filed the current motion to dismiss or for summary judgment.  Plaintiff filed his reply on April 12, 2005.  The Court conducted a hearing on this matter on May 10, 2005.  This matter is now ripe for determination by the Court.

## II.  LEGAL STANDARDS

In considering a Rule 12(b)(1) motion to dismiss for lack of subject matter jurisdiction, the Court assumes that all factual allegations in the complaint are true if it is contended that a complaint simply fails to allege facts upon which subject matter jurisdiction can be based. *Adams v. Bain*, 697 F.2d 1213, 1219 (4th Cir. 1982).  In such a case, the plaintiff is afforded the same procedural protection as it would under a Rule 12(b)(6) motion.  *Id.*  However, if the

factual basis for subject matter jurisdiction is challenged, the plaintiff has the burden of proving

subject matter jurisdiction, and the court may consider evidence outside the pleadings such as

affidavits, depositions, live testimony. *Richmond, Fredericksburg & Potomac R.R. Co. v. United

States*, 945 F.2d 765, 768 (4th Cir. 1991); *Adams*, 697 F.2d at 1219.  In this case, there is a

dispute as to the facts regarding the procedural posture of this case.  The disputed facts are

determinative as to whether this Court has jurisdiction.  Therefore, the Court must determine

whether Plaintiff has established that the Court has subject matter jurisdiction.

### III. DISCUSSION

**A. Breach of the Settlement Agreement**

Plaintiff's first claim is for review of whether the Postal Service has complied with the

terms of the settlement agreement.  Part 1614 of Title 29 of the Code of Federal Regulations

governs issues of equal opportunity in employment for federal agencies.  Section 1614.504

requires that:

> Any settlement agreement knowingly and voluntarily agreed to by the
> parties, reached at any stage of the complaint process, shall be binding on both
> parties. . . .  If the complainant believes that the agency has failed to comply with
> the terms of a settlement agreement . . ., the complainant shall notify the EEO
> Director, in writing, of the alleged noncompliance . . . .  The complainant may
> request that the terms of the settlement agreement be specifically implemented or,
> alternatively, that the complaint be reinstated for further processing from the point
> processing ceased.

29 C.F.R. § 1614.504(a). In this case, there is no question that Plaintiff and Defendant knowingly

and voluntarily entered into a settlement agreement to resolve Plaintiff's complaints.  Plaintiff

filed a request with the EEO Director that his case be reopened because the post office did not

comply with the agreement.

Upon filing of a complaint of noncompliance, "[t]he agency shall resolve the matter and respond to the complainant, in writing . . . . [I]f the complainant is not satisfied with the agency's attempt to resolve the matter, the complainant may appeal to the [Equal Employment Opportunity] Commission for a determination as to whether the agency has complied with the terms of the settlement agreement." 29 C.F.R. § 1614.504(b); *accord* 29 C.F.R. § 1614.401(e). The Postal Service did notify Plaintiff in writing that it had determined that there was no breach of the agreement. The question the Court must address is whether the Plaintiff followed the proper procedure in appealing this decision.

Defendant argues that § 1614.504(b) mandates that Plaintiff's sole recourse after receiving notification of the Postal Service's decision was to file an appeal to the EEOC. Some courts have held that because the language of § 1614.504(b) refers exclusively to an appeal to the EEOC, an appeal to a district court is not permissible. *Ramirez v. Runyon*, 971 F.Supp. 363, 368-69 (C.D. Ill. 1997); *Davis v. Sec'y of Treasury, I.R.S.*, 896 F.Supp. 978, 981 (N.D. Cal. 1995); *cf. Farrell v. Principi*, 366 F.3d 1066, 1067-68 (9th Cir. 2004)(finding that complainant's action in district court was proper because the action was not one to enforce a settlement agreement pursuant to § 1614.504(b)). However, the United States Court of Appeals for the District of Columbia has held that because the language of § 1614.504(b) states that the complainant "*may* appeal" to the EEOC, rather than *"shall* appeal," that this section is merely providing an alternative to the procedures in other code sections. *Saksenasingh v. Sec'y of Educ.*, 126 F.3d 347, 350-51 (D.C. Cir. 1997). For example, 29 C.F.R. § 1614.407 provides that a complainant who has filed a complaint may file with a district court an action under Title VII, the Age Discrimination in Employment Act ("ADEA"), or the Rehabilitation Act within 90 days of

final agency actions or EEOC decisions on appeal.  29 C.F.R. § 1614.110 provides that after the

final action of an agency, the complainant shall be informed of his right to appeal to the EEOC or

to file a civil action in a district court.  The purpose of § 1614.504(b) is merely to give an agency

thirty-five days to respond to a complaint that a settlement agreement has been breached, and to

set a thirty-day window for appeals to the EEOC.  *Saksenasingh*, 126 F.3d at 350-51; *see* 29

C.F.R. § 1614.504(b); *see also* 29 C.F.R. § 1614.402(a) (summarizing the time periods within

which appeals must be filed for each relevant regulation).  Nothing in the language of the

regulation indicates an intent to limit the right of the complainant to pursue an action in district

court.[7]  It is questionable whether the regulation would even have any statutory basis for so

limiting a complainant's rights.  The *Saksenasingh* Court noted that the statutory basis for these

regulations "permits, but does not require, appeal to the EEOC" in addition to complainant's

right to file suit in district court.  *Saksenasingh*, 126 F.3d at 350; *see* 42 U.S.C. § 2000e-16(c).

        This Court finds the reasoning of the *Saksenasingh* Court persuasive.  The Postal Service

EEO office also apparently agrees with the *Saksenasingh* Court.  The EEO office informed

Plaintiff of its decision that the settlement agreement had not been breached, and in the same

---

        [7] Defendant's reading of the regulation would obviate the need to ever use the word
"shall."  Rather, the regulation would only need to use "may" for the options that were available
for complainant, and any other options would be barred by simple omission.  For example, the
regulations require that "[i]f the complainant believes that the agency has failed to comply with
the terms of a settlement agreement . . ., the complainant *shall* notify the EEO Director, in
writing, of the alleged noncompliance."  29 C.F.R. § 1614.504(a) (emphasis added).  If
Defendant was correct, the word "shall" in the preceding clause could be replaced with the word
"may," and the fact that no reference is made to a right to file a claim in district court would be
enough to require notification of the EEO Director.  The fact that the authors of the regulation
found it necessary to use "shall" in one subsection of the regulation, but then used "may" in the
next subsection indicates that "may" and "shall" are not being used interchangeably, as
Defendant's interpretation would imply.

letter advised Plaintiff that he could file an appeal with the EEOC or file a complaint with a district court.  Plaintiff had the option of filing either an appeal to the EEOC or an action with this Court.

However, resolving this issue does not end the Court's inquiry.  Plaintiff allegedly filed an appeal with the EEOC on May 10, 2004, prior to filing his complaint in this Court on July 26, 2004.  Once a complainant has chosen to appeal a final agency action for review by the EEOC, the complainant is committed to that course of action, and cannot abandon administrative review in favor of bringing a civil action.  *Wrenn v. Sec'y, Dep't of Veterans Affairs*, 918 F.2d 1073, 1078 (2d Cir. 1990); *Tolbert v. United States*, 916 F.2d 245, 248-49 (5th Cir. 1990)(citing *White v. Frank*, 895 F.2d 243, 244 (5th Cir. 1990)); *McGinty v. United States Dep't of the Army*, 900 F.2d 1114, 1116-17 (1990); *Rivera v. United States Postal Svc.*, 830 F.2d 1037, 1039 (9th Cir. 1987), *cert. denied*, 486 U.S. 1009 (1988); *Castro v. United States*, 775 F.2d 399, 404 (1st Cir. 1985); *Putrill v. Harris*, 658 F.2d 134, 138 (3d Cir. 1981), *cert. denied*, 462 U.S. 1131 (1983); *Jordan v. United States*, 522 F.2d 1128, 1132-33 (8th Cir. 1975).  *Contra Langford v. United States Army Corps of Engineers*, 839 F.2d 1192, 1194-95 (6th Cir. 1988).  *See generally*, *Stevens v. Dep't of Treasury*, 500 U.S. 1, 9-11 (1991)(refusing to address the split between the circuits).[8]

---

[8]  The Court notes that the filing of certain civil actions will terminate appellate proceedings before the EEOC.  29 C.F.R. § 1614.409.  Specifically, the regulations state that a civil action brought pursuant to § 1614.408 or § 1614.409 shall terminate that process.  *Id*. However, the regulation as written does not make sense, as there is no civil action authorized by § 1614.409, and the regulation appears to refer only to itself.  *See id*.  Prior to November 9, 1999, § 1614.409 was designated as § 1614.410.  Federal Sector Equal Employment Opportunity, 64 Fed. Reg. 37,644, 37,659 (July 12, 1999)(codified at 29 C.F.R. pt. 1614).  It appears that when §§ 1614.408 through 1614.410 were redesignated as §§ 1614.407 through 1614.409, the language of what is now § 1614.409 was not changed.  Therefore, the regulation should properly read: "Filing a civil action under § 1614.407 or § 1614.408 shall terminate Commission processing of the appeal."  This would include actions filed under the Fair Labor Standards Act

Exhaustion of administrative remedies is "variously referred to as a jurisdictional prerequisite to adjudication in the federal courts, a procedural prerequisite to bringing suit, and a requirement that a claimant exhaust administrative remedies." *Sloop v. Memorial Mission Hosp., Inc.*, 198 F.3d 147, 148 (4th Cir. 1999).[9]  Plaintiff has the burden of establishing jurisdiction. *Adams*, 697 F.2d at 1219.  The Court finds that Plaintiff has not satisfied this burden.

Plaintiff was bound to wait either for a decision from the EEOC or for 180 days to pass with no such decision.  29 C.F.R. §§ 1614.407(c)-(d).  It is not relevant to this proceeding that one month after this action was filed, the EEOC issued its final decision.  *See Rivera*, 830 F.2d at 1038-39 (holding the complainant's claims barred despite the fact that the EEOC had issued a final decision between the time complainant filed case in district court and the district court ruled on the matter).  Plaintiff contends that he never filed an appeal with the EEOC.  However, the Court finds that the weight of the evidence does not support Plaintiff's contention.

In a hearing before this Court on May 6, 2005, Plaintiff testified under oath, at least twice, that he undertook some type of appellate action within two weeks of April 30, 2004.  Plaintiff at first stated that he believed this action to be filing this complaint with the Court.  However,

---

or the Equal Pay Act.  29 C.F.R. § 1614.408.  It would also include any civil action under Title VII, the ADEA, and the Rehabilitation Act *if* no appeal has been filed or 180 days had passed without final action.  29 C.F.R. § 1614.407.  Essentially, in the case of the latter actions, EEOC proceedings could only be terminated by the filing of a civil action if the EEOC had not issued a final decision after 180 days.

[9]  The *Sloop* Court had before it a claim under Title VII.  Given that actions under Title VII, the ADEA, and the Rehabilitation Act are treated similarly under the statutes and regulations at issue in this case, the Court finds that the exhaustion requirement is jurisdictional no matter under which of the three statutes Plaintiff brings his claims.

11

Plaintiff's action before this Court was not filed until the end of July, almost three months later.[10]
The Court notes that the EEOC notified the Postal Service on May 18, 2004, that it had received
an appeal of the Postal Service EEO decision on May 10, 2004 regarding Plaintiff.  The date of
May 10, 2004, does fall within two weeks of April 30, 2004.  When the Court confronted
Plaintiff with this discrepancy in dates, Plaintiff claimed that he had been mistaken in his earlier
statement to the Court, and that he had not taken any action within two weeks.  Plaintiff was
unable to provide an explanation for why the EEOC would pursue an appellate review of his case
without any request from Plaintiff to do so.

After the hearing, the Government provided the Court with a copy of a PS Form 3573
which appears to be a copy of the appeal form filed by Plaintiff with the EEOC.  The form
appears to be signed by Plaintiff and dated May 8, 2004.  Plaintiff admits that the signature is his,
but denies that he wrote in the date on Line 13 or his name in Line 1.  However, even if all the
writing is not in Plaintiff's hand, this is not sufficient to prove that the form was forged by a
secret cabal of postal service employees with the foresight to file an appeal of a decision in the
postal service's favor so as to derail Plaintiff's attempt three months later to exercise his rights
before this Court.  The fact that Plaintiff does not contest that the phone number, home address,
and the agency name and address are all written by him, and that Plaintiff signed the form,
indicates to the Court that Plaintiff may have had assistance filling out the form, but that Plaintiff
was fully aware that he was filing an appeal.

---

[10]  The Court notes that Plaintiff's filing was only a few days before Plaintiff's 90-day
time to file with the district court expired, and only four days after Plaintiff had some sort of
physical contest with Mercer at the station.

The Court also notes that Plaintiff has attached to his brief in opposition to this motion a letter from Plaintiff to the EEOC (Pl. Mem. Opp. Mot. Dismiss App. 21).  Unfortunately this letter is not dated, nor does it include a copy of any mailing envelope as many of Plaintiff's records do.  However, the letter clearly references the EEOC docket number that was assigned to his appeal, and the date that the appeal was filed.  It also presents in typed format a much longer exposition of the issues he noted in his initial complaint of breach to the EEO.  This letter clearly shows Plaintiff was aware an appeal was pending before the EEOC.

The EEOC notified the Postal Service it had received an appeal from Plaintiff.  The Postal Service responded to the EEOC's notice, and as evidenced by the certificate of service, delivered a copy of this response to Plaintiff on June 24, 2004.  On August 23, 2004, the EEOC issued an opinion on Plaintiff's appeal affirming the decision of the EEO.  At no time did Plaintiff question why a proceeding was going forward before the EEOC.  When Plaintiff received the decision of the EEOC, he did not question why such a decision had been issued, but instead approached a clerk of this Court to determine whether it was appropriate to file an appeal. Finally, Plaintiff stated in the hearing that he did not understand the difference between the Postal Service EEO and the EEOC.  Yet Plaintiff refers to the "EEO" and the "Commission" at separate points in his Complaint, indicating that he did not consider them to be the same body. The record is replete with evidence – much of it provided by Plaintiff – that Plaintiff is very cognizant of his rights and the procedures by which he can protect them.  Plaintiff has also been extremely quick to pursue corrective action when his rights have been infringed.[11]  On the basis

---

[11]  The Court notes that consistent with Plaintiff's pattern of simultaneously seeking relief in multiple forums, on March 14, 2005, before the Court could rule in this case, Plaintiff filed a related complaint with the United States Merit System Protection Board.

of the testimony of Plaintiff and the record before the Court, it strains credibility to believe that

Plaintiff waited nearly three months to pursue any appeal of the EEO decision of April 30, 2004,

and that Plaintiff did not file an appeal of that decision, or was unaware that an appellate review

of that decision was proceeding before the EEOC, during that time period.  The Court finds that

Plaintiff filed an appeal with the EEOC, and that appeal was pending at the time Plaintiff filed

this action.  Plaintiff was bound to wait for the EEOC to issue its decision or for 180 days to pass

with no such decision.  Therefore, Plaintiff has failed to meet his burden of establishing

jurisdiction before this Court.  Accordingly, Plaintiff's complaint for breach of the settlement

agreement is **DISMISSED**.

## B.  Retaliation

In favorably construing Plaintiff's complaint, the Court must also consider that Plaintiff

appears to be filing a claim for retaliation, in addition to the action for breach of settlement

agreement.[12]  Plaintiff contends that he was continually threatened and harassed after the

mediation at the EEO office.  The Court must determine whether it has any jurisdiction to

consider these claims.

---

[12] Because Plaintiff's initial complaint to the EEO asserted discrimination on the basis of his age and disability, any retaliation claim asserted by Plaintiff would arise pursuant to the ADEA, 29 U.S.C. § 623(d), and/or the Rehabilitation Act, 42 U.S.C. § 12203(a).  The standards applicable to the Rehabilitation Act are the same as those for the Americans with Disability Act ("ADA").  29 U.S.C. § 791(g).  Retaliation claims under the ADA are treated the same as retaliation claims brought pursuant to Title VII.  *See Soileau v. Guilford of Maine, Inc.*, 105 F.3d 12, 16 (1st Cir. 1997); *Krouse v. American Sterilizer Co.*, 126 F.3d 494, 500 (3d Cir. 1997); *Penny v. United Parcel Svc.*, 128 F.3d 408, 417 (6th Cir. 1997); *Stewart v. Happy Herman's Cheshire Bridge, Inc.*, 117 F.3d 1278, 1287 (11th Cir. 1997).  The same is true for retaliation clams under the ADEA.  *See Shirley v. Chrysler First, Inc.*, 970 F.2d 39, 42 n.5 (5th Cir. 1992); *Passer v. American Chemical Soc'y*, 935 F.2d 322, 330 (D.C. Cir. 1991); *Merrick v. Farmers Ins. Group*, 892 F.2d 1434, 1441 (9th Cir. 1990).

A retaliation claim which is "related to" and has "grown out of" an EEOC charge may be raised for the first time in district court.  *See Nealon v. Stone*, 958 F.2d 584, 590 (4th Cir. 1992).  Accordingly, Plaintiff may file suit for retaliation without first raising the claim as an administrative complaint.  *Id*.  However, Plaintiff still may not avail himself of two forums at once.  In *Nealon*, the plaintiff claimed that the Army retaliated against her for the filing of an EEOC complaint.  *Id*.  In this case, Plaintiff claims that the retaliation began soon after the settlement agreement was reached, and Plaintiff included his retaliation claim in his complaint to the EEO and the EEOC.[13]  Because Plaintiff has already raised his retaliation claims before the EEOC, Plaintiff could not file those claims in district court.  *See* discussion *supra* pp. 10-11.

---

[13]  Plaintiff's March 24, 2004 letter to the Postal Service EEO states that he has been subject to "harassment" since the mediation.  During his interview with the EEO, Plaintiff informed them that he was interrogated about the time he spent on his route and that he was denied work when other part-time carriers would get work.  (Pl. Mem. Opp. Mot. Dismiss App. 14).  Plaintiff also stated that Mercer told him "Why don't you just quit?"  (*Id*.)
Plaintiff's letter to the EEOC is even more explicit in expressing his claims of retaliation.  Plaintiff stated:

> Since the mediation has taken place, I felted [sic] that Milan station supervisor was forcing me into retirement. . . .  I feel like I was being discipline [sic] for bringing up the above charge.  I have been treated badly since the mediation took place, management would tell me that there is no work for me, and at the same time allowed casual to work in my place.  They would tell me that there is [sic] no available vehicles so you would have to use the mail cart the whole route and then refused to put the mail in the relay boxes, but all three casual would have vehicles.  Many time the supervisor will call my home and tell me to come in to work, and when I get to the station another supervisor would tell me [sic] there's no work for you, give me a call in the next two or three days, [sic] but casual are working in my place.  Supervisor would never talk to me, they begin screaming trying to cause to [sic] me to argue with them.  I strongly feel that I am being set up in that station.  I feel that they are trying to force me into retirement aggressively.  Moreover, I feel that they did not intend to follow mediation guideline, however they were to [sic] busy trying to ruin me.

(Pl. Mem. Opp. Mot. Dismiss App. 21).

The Court has no jurisdiction to consider Plaintiff's retaliation claims.  Accordingly, Platiniff's complaint of retaliation is **DISMISSED**.

## C.  Incidents Prior to the Settlement Agreement

Finally, the Court notes that Plaintiff has included in his allegations two other incidents. Plaintiff claims that the Postal Police were called to confront him for fraudulent reasons on July 11, 2003, and that the Milan station manager and supervisor falsely stated in Plaintiff's notice of suspension of December 13, 2003 that he had been injured in the accident of November 26, 2003.  The Court notes that these alleged incidents occurred prior to the settlement agreement, and finds that the incidents are not relevant to whether the settlement agreement was breached, nor to any retaliation claim arising from the settlement agreement.  To the extent that these incidents might form the basis of any separate complaint, the Court finds that no administrative complaints have been filed in regards to these incidents, and the time for filing any such complaints has long since expired.  Therefore, neither incident could be properly before the Court.

## IV. CONCLUSION

For the foregoing reasons, Defendant's Motion to Dismiss is **GRANTED**.  Plaintiff's Complaint is **DISMISSED**.

Plaintiff is **ADVISED** that he may appeal from this final order by forwarding a written notice of appeal to the Clerk of the United States District Court, United States Courthouse, 600 Granby Street, Norfolk, Virginia 23510.  Said written notice must be received by the Clerk within sixty (60) days from the date of this order.

The Court **DIRECTS** the Clerk to send a copy of this Order to the parties.

**IT IS SO ORDERED.**

_____/s/_____
RAYMOND A. JACKSON
UNITED STATES DISTRICT JUDGE

Norfolk, Virginia
May 17, 2005